#31091-a-SRJ
**2026 S.D. 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

| | |
|---|---|
| SAVE CENTENNIAL VALLEY ASSOCIATION, INC. and CHARLES BROWN, | Petitioners and Appellants, |
| v. | |
| BRENDA MCGRUDER, in her capacity as Lawrence County Auditor; COUNTY OF LAWRENCE, SOUTH DAKOTA; BOARD OF COMMISSIONERS OF LAWRENCE COUNTY, SOUTH DAKOTA; RICHARD SLEEP; RICK TYSDAL; BRANDON FLANAGAN; BOB EWING; and ERIC JENNINGS, in their official capacity, | Respondents and Appellees. |

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

THE HONORABLE ERIC J. STRAWN
Judge

| | |
|---|---|
| MATTHEW J. LUCKLUM of Bangs, McCullen, Butler, Foye & Simmons, LLP Rapid City, South Dakota | Attorneys for petitioners and appellants. |
| KATELYN A. COOK RICHARD M. WILLIAMS of Gunderson, Palmer, Nelson & Ashmore, LLP Rapid City, South Dakota | Attorneys for respondents and appellees. |
| | ARGUED MARCH 19, 2026 OPINION FILED **05/06/26** |

# Table of Contents

JENSEN, Chief Justice ............................................................................................... 1

    Factual and Procedural History ........................................................................ 1

    Standard of Review ............................................................................................ 3

    Analysis ............................................................................................................... 4

#31091

JENSEN, Chief Justice

[¶1.]     The Lawrence County Commission (the Commission) adopted Ordinance #24-05, amending portions of the Lawrence County Zoning Ordinance (Zoning Ordinance). In response, Save Centennial Valley Association (SCVA) filed a petition with the Lawrence County Auditor (the Auditor) asserting the amendments were a legislative decision subject to a public referendum vote pursuant to SDCL 7-18A-15.1. The Auditor rejected the petition, informing SCVA that Ordinance #24-05 was administrative in nature and not subject to a public referendum under the statute. SCVA sought a writ of mandamus to force the referendum, which the circuit court denied. SCVA appeals. We affirm.

## Factual and Procedural History

[¶2.]     The Commission voted to adopt Ordinance #24-05 on November 26, 2024. The Ordinance amended the conditional use permits (CUP) chapter of the Zoning Ordinance by striking the words "County Commission" for "Board of Adjustment" and "Planning and Zoning Board" for "Board of Adjustment."[1] SCVA presented the Auditor with a petition to subject Ordinance #24-05 to a referendum. There is no dispute the petition contained the required number of signatures from qualified electors under SDCL 7-18A-18.1. However, the Auditor sought guidance from the Commission as to whether the amendment to the Ordinance could be certified for placement on the ballot.

---

1.    Ordinance #24-05 made similar changes to the variance chapter of the Zoning Ordinance. SCVA makes a passing reference in its brief that "the Ordinance Amendment also made discretionary changes to items like variances," but does not develop any arguments to suggest these changes were legislative within the meaning of SDCL 7-18A-15.1.

-1-

[¶3.]     The Commission, acting on advice of counsel, determined that Ordinance #24-05 was "initiated to bring the existing ordinance into compliance with state law—thereby implementing a plan already put in place by the State Legislature[.]" In the Commission's view, Ordinance #24-05 was not a legislative decision, but an administrative decision, and thus not referrable. Thereafter, the Auditor informed the petitioners in writing that Ordinance #24-05 "was an administrative decision as defined by SDCL 7-18A-15.1 and not subject to the referendum process."

[¶4.]     SCVA filed a petition in the circuit court seeking a writ of mandamus against the Auditor, Lawrence County, the Commission, and each commissioner in their official capacity (collectively, the County), directing the County to refer Ordinance #24-05 for a public referendum vote. The County moved for judgment on the pleadings pursuant to SDCL 15-6-12(c). The parties submitted briefs and presented arguments at a hearing on the motion.

[¶5.]     The County argued that SCVA was not entitled to mandamus relief because Ordinance #24-05 made an administrative change designed to conform the Zoning Ordinance to South Dakota law by providing for the board of adjustment to consider all CUP applications. The County further argued that Ordinance #24-05 did not create any new rules or policy, but rather implemented a plan already put in place by the Legislature and the Zoning Ordinance. Additionally, the County argued that Ordinance #24-05 had no impact on citizen referendums because decisions on CUPs—whether made by the Commission or the board of adjustment— are not subject to referendum, as a petition for writ of certiorari is the sole remedy

to challenge a CUP. SCVA maintained that Ordinance #24-05 was a legislative decision because the Commission has absolute discretion under state law to decide whether to substitute the board of adjustment for the Commission to consider CUP applications. By making this change, SCVA asserted, Ordinance #24-05 eliminated the ability of citizens to challenge all future CUP decisions by referendum.

[¶6.] The circuit court granted the County's motion for judgment on the pleadings, determining that SCVA was not entitled to a writ of mandamus because Ordinance #24-05 was not a legislative change subject to referendum pursuant to SDCL 7-18A-15.1. SCVA appeals the circuit court's determination that Ordinance #24-05 was not a legislative decision.

## Standard of Review

[¶7.] "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." SDCL 15-6-12(c). "Judgment on the pleadings provides an expeditious remedy to test the legal sufficiency, substance, and form of the pleadings. However, it is only an appropriate remedy to resolve issues of law when there are no remaining issues of fact." *Sturzenbecher v. Sioux Cnty. Ranch, LLC*, 2025 S.D. 24, ¶ 45, 20 N.W.3d 419, 432 (citation omitted). "A motion for judgment on the pleadings can be granted 'only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law.'" *Id.* (citation omitted). "The Court must accept as true the facts in the complaint and draw all reasonable inferences in the favor of the nonmoving party." *Id.* (citation omitted). "When considering a motion for judgment on the pleadings, the court considers 'the pleadings themselves,

materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" *Id.* ¶ 46, 20 N.W.3d at 432 (citation omitted). "We review a ruling on a motion for judgment on the pleadings de novo." *Id.* (citation omitted).

[¶8.]	We review the circuit court's decision to grant or deny a writ of mandamus for abuse of discretion. *Puffy's, LLC v. Dep't of Health*, 2025 S.D. 10, ¶ 26, 18 N.W.3d 134, 142 (citation omitted). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Id.* (citations omitted). "A [circuit] court abuses its discretion when it makes an error of law." *Id.* (citation omitted). "Underlying questions of statutory interpretation and application in the mandamus action 'are questions of law that we review de novo.'" *Id.* (citations omitted).

## Analysis

[¶9.]	"Mandamus is a potent, but precise remedy. Its power lies in its expediency; its precision in its narrow application." *Okerson v. Common Council of City of Hot Springs*, 2009 S.D. 30, ¶ 6, 767 N.W.2d 531, 533 (citation omitted). "A writ of mandamus is appropriate only when there is not a plain, speedy, and adequate remedy in the ordinary course of law." *Hauck v. Clay Cnty. Comm'n*, 2023 S.D. 43, ¶ 11, 994 N.W.2d 707, 711 (citations omitted). "The granting of a writ of mandamus is not a matter of absolute right, but is vested in the sound discretion of the court; and, where there is reason to doubt the necessity or propriety of issuing it, it should be refused." *Pres. French Creek, Inc. v. Cnty. of Custer*, 2024 S.D. 45, ¶ 8, 10 N.W.3d 233, 237 (citations omitted).

[¶10.]    Mandamus may be an appropriate remedy to compel referendum when there exists "a clear legal right to performance of the specific duty sought to be compelled and the [auditor has] a definite legal obligation to perform that duty." *Vitek v. Bon Homme Cnty. Bd. of Comm'rs*, 2002 S.D. 45, ¶ 8, 644 N.W.2d 231, 234 (citations omitted). SCVA claims it has a clear legal right under SDCL 7-18A-15.1 to compel the Auditor to place Ordinance #24-05 on the ballot.[2] Neither party disputes this is an issue that is appropriately determined on the pleadings as a matter of law.

[¶11.]    SDCL 7-18A-15.1 provides that "[a]ny legislative decision of a board of county commissioners is subject to the referendum process[,]" but "[n]o administrative decision of a governing body is subject to the referendum process, unless specifically authorized by this code." A legislative decision is defined as "one that enacts a permanent law or lays down a rule of conduct or course of policy for the guidance of citizens or their officers." *Id.* An administrative decision is defined as "one that merely puts into execution a plan already adopted by the governing body itself or by the Legislature." *Id.* Examples of legislative decisions include "[a]ny matter of a permanent or general character[,]" while examples of administrative decisions include "[s]upervision of a program . . . [h]iring, disciplining, and setting the salaries of employees[.]" *Id.*

---

2.    SCVA also references SDCL 11-2-22, which provides in part that "[t]he comprehensive plan, zoning ordinance, and subdivision ordinance may be referred to a vote of the qualified voters of the county[.]" However, SCVA does not argue that the amendments in Ordinance #24-05 are in and of themselves referrable as a "comprehensive plan" or "zoning ordinance" within the meaning of SDCL 11-2-22. As such, SCVA must ultimately establish that the amendments are legislative within the meaning of SDCL 7-18A-15.1.

[¶12.] SCVA argues that the Commission's discretion in deciding to substitute the board of adjustment for the Commission to consider CUP applications under the Zoning Ordinance demonstrates that this was a legislative decision. SCVA relies on our decisions in *Kirschenman v. Hutchinson Cnty. Bd. of Comm'rs*, 2003 S.D. 4, 656 N.W.2d 330 and *Wang v. Patterson*, 469 N.W.2d 577 (S.D. 1991)[3], which held that "where the local government has discretion as to what it may do and it acts under that discretion, it is a legislative act subject to referendum." *Kirschenman*, 2003 S.D. 4, ¶ 7, 656 N.W.2d at 333, *overruled on other grounds by Bechen v. Moody Cnty. Bd. of Comm'rs*, 2005 S.D. 93, 703 N.W.2d 662 (citing *Wang*, 469 N.W.2d at 580).[4] SCVA also argues that the decision to substitute the board of adjustment for the Commission to consider CUP applications was legislative because it resulted in a new policy or process by extinguishing the right of citizens to challenge such decisions by referendum.

[¶13.] The County responds that Ordinance #24-05 did not establish a new law or policy with respect to CUP applications. Instead, the County argues that

---

3.  *Wang* reversed a circuit court's denial of a writ of mandamus seeking to compel a referendum on the city's decision to condemn land for an airport. 469 N.W.2d at 577–78. The citizens contended that a plan adopted by the city did not authorize condemnation and thus did not apprise them that the land would be condemned for the airport. *Id.* at 579–80. This Court agreed that the initial plan did not authorize condemnation, and while there was eventually an amendment allowing land condemnation, it was only allowed "if required." *Id.* at 580. Therefore, we held that the city retained discretion as to whether the condemnation was necessary and that exercising such discretion was a legislative decision. *Id.*

4.  *Kirschenman* was overruled by *Bechen* insofar as the case could be read as treating a board of county commissioners as identical to the board of adjustment. *Bechen*, 2005 S.D. 93, ¶ 11, 703 N.W.2d at 665.

naming the board of adjustment as the authorized body to consider CUP applications under the Zoning Ordinance was required by the 2015 legislative changes to SDCL 11-2-53 and was part of a plan already established by the Legislature and the Zoning Ordinance. The County contends the changes within Ordinance #24-05 were necessary to comply with state law.

[¶14.] In addressing the extent of the County's discretion to substitute the board of adjustment for the Commission to consider CUP applications, the parties discuss at length the history of SDCL 11-2-17.3 and SDCL 11-2-53 and whether the board of adjustment is the only entity that may decide CUPs under South Dakota law.

[¶15.] Prior to 2015, there was no statutory authorization for the board of adjustment to consider CUPs. However, *In re Conditional Use Permit No. 13-08*, 2014 S.D. 75, ¶ 25, 855 N.W.2d 836, 845 and *Tibbs v. Moody Cnty. Bd. of Comm'rs*, 2014 S.D. 44, ¶ 26, 851 N.W.2d 208, 217, held that a board of adjustment could be authorized to consider CUPs under a county's comprehensive zoning ordinance, but that the board's authority over CUPs was not exclusive. Less than a year later, in 2015, the Legislature amended SDCL 11-2-53 by adding subsection (3), which specifically authorized a board of adjustment to consider CUPs. "The board of adjustment may: . . . (3) Hear and determine conditional uses as authorized by the zoning ordinance." SDCL 11-2-53(3). The County argues the Legislature's amendment demonstrates an intention to provide for and limit the authority over CUPs to the board of adjustment. SCVA counters that nothing within SDCL 11-2-53(3) makes this authority exclusive and that SDCL 11-2-17.3 provides counties

with the discretion to determine the body responsible to approve CUPs. *See* SDCL 11-2-17.3 ("A county zoning ordinance adopted under this chapter that authorizes a conditional use of real property shall specify the approving authority[.]").[5]

[¶16.]     Ultimately, it is unnecessary to decide whether the board of adjustment is the only county body authorized to decide CUPs in order to resolve the question before us. Discretion alone is not dispositive of whether a commission action is legislative within the meaning of SDCL 7-18A-15.1. Rather, the statute recognizes that some discretionary decisions are administrative, such as personnel decisions and the supervision of programs. The more significant inquiry under SDCL 7-18A-15.1 is whether the discretionary decision establishes a new rule or course of policy, or merely executes a plan already adopted by the governing body or the Legislature.

[¶17.]     Ordinance #24-05 does not establish a new rule or policy for CUP applications under the Zoning Ordinance. The County's decision to permit CUPs within its Zoning Ordinance, as well as the standards and criteria for such decisions, were already in place before Ordinance #24-05. Ordinance #24-05 is consistent with state law and does not modify any of the standards or criteria for

---

5.     The parties also disagree on the import of SDCL 11-2-49 and SDCL 11-2-60 and the discretion of the County to appoint a board of adjustment to hear CUPs under a comprehensive zoning ordinance. SDCL 11-2-49 provides, "Except as otherwise provided by § 11-2-60, the board *shall* provide for the appointment of a board of adjustment, or for the planning and zoning commission to act as a board of adjustment[.]" (Emphasis added.) Alternatively, SDCL 11-2-60 provides, "In lieu of appointing the board of adjustment provided by § 11-2-49, the board of county commissioners having adopted and in effect a zoning ordinance may act as and perform all the duties and exercise the powers of the board of adjustment."

considering a CUP application. Instead, it merely "puts into execution a plan already adopted by the governing body itself or by the Legislature" by providing that the commissioners, acting as the board of adjustment, are responsible for the decision. SDCL 7-18A-15.1. *See also* SDCL 11-2-60 (providing that "the board of county commissioners having adopted and in effect a zoning ordinance may act as and perform all the duties and exercise the powers of the board of adjustment."). Additionally, contrary to the claim of SCVA, we also conclude that Ordinance #24-05 was an administrative change because the amendments in Ordinance #24-05 do not impact or affect the citizens' right of referendum for CUP decisions.

[¶18.] SCVA argues that under SDCL 7-18A-15.1, some CUP decisions made by a county commission may be subject to public referendum, while CUP decisions made by a board of adjustment can never be referred. *See Bechen*, 2005 S.D. 93, ¶ 28, 703 N.W.2d at 669 ("Since the decisions of a board of adjustment cannot be referred to a public vote, [petitioners] do not have a legal right to submit the [CUP] decision of [the board of adjustment] to a vote, and Commission does not have a legal obligation to place the issue on the ballot.").

[¶19.] SCVA's claim that some CUP decisions made by a county commission may be legislative within the meaning of SDCL 7-18A-15.1 is predicated on *Kirschenman*. In *Kirschenman*, we reversed a circuit court's denial of a writ of mandamus to compel a referendum on a county commission's approval of a CUP to construct a large hog confinement facility. 2003 S.D. 4, ¶ 12, 656 N.W.2d at 335. Relying on SDCL 7-18A-15.1, this Court determined the CUP decision was a legislative action because the commission "*retain[ed] complete discretion* to

determine whether to grant or deny particular conditional use permits." *Id.* ¶ 7, 656 N.W.2d at 333 (emphasis added). But as discussed above, discretion alone is not the determining factor in whether a county commission's action is legislative or administrative. Instead, SDCL 7-18A-15.1 focuses on the nature of the discretionary decision to determine whether or not the decision is legislative.

[¶20.] We have also held that a "decision to grant or deny a conditional use permit is quasi-judicial and therefore is subject to due process constraints." *Miles v. Spink Cnty. Bd. of Adjustment*, 2022 S.D. 15, ¶ 32, 972 N.W.2d 136, 147 (quoting *Holborn v. Deuel Cnty. Bd. of Adjustment*, 2021 S.D. 6, ¶ 21, 955 N.W.2d 363, 374). "Administrative action is quasi-judicial if it 'investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist' rather than 'look[ing] to the future and chang[ing] existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power.'" *Dep't of Game, Fish & Parks v. Troy Twp.*, 2017 S.D. 50, ¶ 21, 900 N.W.2d 840, 849 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908)). "Perhaps as good a criterion as any for determining what is judicial is merely to compare the action in question with the ordinary business of courts: that which resembles what courts customarily do is judicial, and that which has no such resemblance is nonjudicial." *Id.* (citations omitted).

[¶21.] Significantly, administrative quasi-judicial decisions are subject to due process constraints that are not addressed in the referendum process.

> [T]he due process requirements (*i.e.* the right to notice and a hearing) granted in SDCL ch. 11-2 serve several important functions including: safeguarding against the arbitrary exercise of power, informing the decision makers, affording the affected

> landowners with the opportunity to formally voice their concerns and present evidence in opposition to opposed measures, and providing an avenue for expression of public opinion.

*Schafer v. Deuel Cnty. Bd. of Comm'rs*, 2006 S.D. 106, ¶ 13, 725 N.W.2d 241, 246 (citation omitted). "One consequence of these principles is that when a board of adjustment, a governmental agency, seeks to balance competing interests of a property owner and the public[,] the board's discretion must be based upon the evidence before it and fixed principles." *Mustang Run Wind Project, LLC v. Osage Cnty. Bd. of Adjustment*, 2016 O.K. 113, ¶ 30, 387 P.3d 333, 345.

[¶22.] The Legislature has also limited the ability to challenge a CUP decision under SDCL 11-2-61.1, which requires parties to petition for a writ of certiorari to appeal the grant or denial of a CUP. "Any appeal of a decision of granting or denying a conditional use permit shall be brought under a petition . . . for a writ of certiorari directed to the *approving authority* . . . . The court shall give deference to the decision of the *approving authority* in interpreting the authority's ordinances." *Id.* (emphasis added). Additionally, SDCL 11-2-61.1 provides that "notwithstanding any provision of law to the contrary, [an appeal of a decision on a CUP] shall be determined under a writ of certiorari standard *regardless of the form of the approving authority*." (Emphasis added.)[6] The Legislature has provided the

---

6. While the county commissioners may sit as the board of adjustment, they remain distinct entities:

> [W]hen a county commission decides not to appoint a separate board of adjustment, but elects to sit as the board of adjustment, this does not mean that the county commission and the board of adjustment become a single entity. While the members of each board may be identical, each board remains a separate legal

(continued . . .)

same limited remedy to challenge a CUP regardless of whether the decision is rendered by the board of adjustment or the commission. *See* SDCL 7-8-30 ("An appeal [of a county commission decision to the circuit court] relating to a conditional use permit determination shall be heard and determined pursuant to § 11-2-61.1.").

[¶23.] While the remedies of appeal and referendum are distinct, the quasi-judicial nature of a CUP decision, including due process constraints, militates against the ability of citizens to challenge such a decision as legislative. However, some of our decisions since *Kirschenman* have not been consistent in applying such a rule. In *In re Conditional Use Permit No. 13-08*, this Court noted, "The implication of *Kirschenman* and [*In re Conditional Use Permit No. 13-08*] is that a conditional use could conceivably be simultaneously quasi-judicial for purposes of determining its constitutionality and quasi-legislative for purposes of being subject to referendum." 2014 S.D. 75, ¶ 15 n.1, 855 N.W.2d at 841 n.1. More recently, however, we have referenced cases from other states, which hold that decisions to grant or deny CUPs are administrative/quasi-judicial, not legislative. *See Croell Redi-Mix, Inc. v. Pennington Cnty. Bd. of Comm'rs*, 2017 S.D. 87, ¶ 26 n.5, 905 N.W.2d 344, 351 n.5 (comparing a county commission's role in taking administrative quasi-judicial action with the administrative quasi-judicial action of

---

(. . . continued)

>entity with its own distinct powers and responsibilities under state law.

*Bechen*, 2005 S.D. 93, ¶ 11, 703 N.W.2d at 665.

a zoning board's decision whether to issue a conditional use permit);[7] *see also Cnty. of Lancaster v. Mecklenburg Cnty.*, 434 S.E.2d 604, 612 (N.C. 1993) (citations omitted) ("In the zoning context, these quasi-judicial decisions involve the application of zoning policies to individual situations, such as variances, special and conditional use permits, and appeals of administrative determinations."); *Redelsperger v. City of Avondale*, 87 P.3d 843, 851 (Ariz. Ct. App. 2004) ("[T]he implementation of existing zoning ordinances, by the grant of a variance, special use permit or tentative approval of a subdivision plat, generally is considered to involve 'administrative action' not properly subject to voter initiative or referendum.") (citation omitted).

[¶24.]     The duality premise set forth in *Kirschenman*, that some CUP decisions are referrable while others are not, is not supportable. The concern expressed in *Kirschenman* that a county has unfettered discretion to grant CUP applications is inconsistent with the current requirements of state law and constitutional principles. Both state statutes and constitutional protections require zoning authorities to establish and follow objective criteria and standards when deciding CUPs. *See* SDCL 11-2-17.3; *Schafer*, 2006 S.D. 106, ¶ 12, 725 N.W.2d at

---

7.     The footnote in *Croell* gives the following examples: *Arnel Dev. Co. v. City of Costa Mesa*, 620 P.2d 565, 569 (Cal. 1980) (en banc) ("[Z]oning amendments are legislative, but administrative decisions, such as variances and use permits, are adjudicative."); *Mustang Run Wind Project, LLC*, 387 P.3d at 345 ("A board of adjustment deciding an application for a variance or a conditional use does not exercise a legislative power in changing a zoning ordinance, but exercises a quasi-judicial power based upon the facts presented to the board."); *Chioffi v. Winooski Zoning Bd.*, 556 A.2d 103, 106 (Vt. 1989) ("[Z]oning boards, in ruling on applications for special exceptions to a zoning ordinance, perform quasi-judicial functions.").

246 (citation omitted) ("This Court has recognized that allowing 'the use of a person's property to be held hostage by the will and whims of neighboring landowners without adherence or application of any standards or guidelines' is repugnant to the due process clause of the Fourteenth Amendment."). The decision to deny or grant a CUP does not create a new rule, but merely applies the procedure and criteria already adopted by the commission, within the parameters of state law, based upon the facts presented concerning the CUP application. This is true regardless of whether the approving authority is the commission or the board of adjustment. Therefore, Ordinance #24-05 does not eliminate a right by citizens to refer CUP decisions, as such decisions are not legislative within the meaning of SDCL 7-18A-15.1.

[¶25.] Ordinance #24-05 does not create a change in the law or the criteria for considering CUPs, nor does it impact any remedy provided by law. Instead, the amendments clarify that all CUPs under the Zoning Ordinance will be decided by the commissioners sitting as the board of adjustment. As such, any discretion exercised by the Commission in effecting this change "merely [put] into execution a plan already adopted by the governing body itself or by the Legislature[,]" and was an administrative decision. SDCL 7-18A-15.1. SCVA has not established a clear legal right on the pleadings for issuance of a writ of mandamus to compel the Auditor to place Ordinance #24-05 on the ballot for referendum.

[¶26.] The circuit court's judgment denying the writ of mandamus on the pleadings is affirmed.

[¶27.] SALTER, DEVANEY, MYREN, and GUSINSKY, Justices, concur.